Roger Chen of Latham Watkins, on behalf of Appellant and Petitioner Thoratec. Perhaps before I discuss our case, I can briefly address the Court's docket order, which asked about the applicability of the potential issue in Kruponov and whether it would apply in this case. We believe it would, were the Court to decide that 1782 applications were dispositive. And we believe that that would apply. Now, we did not raise the issue below. So why isn't it waived? Two reasons, and that would be from the Cold Mountain case, 375F3D884, if there's a change in the law. And if the issue is purely ---- They didn't change. There's no change. Well, I believe under the Four Pillars case, as well as all the ---- There was no law. Well, the Four Pillars case did treat it as dispositive. And based on that, as well as based on 15 years of case law ---- Based on the Four Pillars case, there's no issue. The Four Pillars case at least treated it as dispositive. I realize it wasn't raised there. But I believe that that would be enough of a change in law, that we didn't raise it because we knew that this case law uniformly treated these as nondispositive. But there's also a second exception in the Cold Mountain case, and that is where the issue is purely one of law and does not depend on the factual record developed below, it can also be retroactively applied to another case. And it's a simple one-issue legal question of whether it's dispositive or not. And so I think for that exception under the Cold Mountain case, it could be applied here, as well. And, frankly, also in an out-kind of situation, there would have to be some prejudice, wouldn't there? Well, I think, and to your question that you raised in the prior appeal, I think it is quite important in this case, because... Well, the problem that I have with all of this is you don't raise it, you didn't think it was a big deal, nobody's had a chance to brief it, and now you're saying, oh, it makes a big difference in this case. It changes the decision-maker. Now, I would not say that you should decide it based on our argument in our case, certainly. But if the Court were to change the law, and it has come up, it should certainly apply in this case. I think we were able to, we reasonably relied on the fact that this Court in Four Pillars, as well as about 15 years of Ninth Circuit district court cases, had treated it as nondispositive. So it's not like it didn't matter to us, but we realized that there were other issues that seemed to be more relevant to raise. Or more important. Well, in view of the case law that we were facing, we were facing Four Pillars and dozens of years of district court cases telling us that it was nondispositive. And that's how we treated it. If the law changes, it should apply to us. Roberts. Okay. Let's go to this case. Sure. We don't need to consider the mandamus position at this point, do we? No. Unless the issue of In re Hoagland comes up and the Court for some reason decides it doesn't have jurisdiction for the appeal.  And even if we disagree with the case, can't we avoid the issue by ruling on the merits of the mandamus? If you don't agree with Hoagland, but you decide on the merits that the mandamus should be granted, obviously granting the mandamus would moot the Hoagland issue. Well, let's talk about Hoagland. As I understand it, in this particular case, the plaintiff filed the application for the issuance. The district court granted the application, ordered the production. Nobody filed a motion to quash. Nobody fought it. The only motions filed, the defendant filed a joint letter brief. They never challenged the grant. The judge resolved the discovery problems and ordered the production. It seems to me that the Hoagland issue is avoided, because everything you could have done as a defendant or may have done as a defendant to avoid it not being final in Hoagland, you didn't do. I would not agree with that. Why? So the reason is that the initial order that the magistrate judge granted on an ex parte basis simply authorized the issuance of a subpoena. That has been the practice in the in raid Tokyo district court case. And did you move to quash? We did not, because that very same order said we may seek to quash, but discovery disputes are subject to the standing order. Now, the standing order expressly prohibits all discovery motions, and furthermore, the magistrate judge had previously held that discovery disputes subject to the standing order. The standing order precludes motions to quash. But just a minute. That's just what I got through. So you didn't do anything on quash. You filed your joint letter briefs. You never challenged the grant. The judge resolved the discovery problems and ordered the production. In my book, we're at the finality of that decision now. And now you raise that it shouldn't be enforced. So why is Hoagland even relevant here? The appeal that would be under whether In re Hoagland or Global Fishing applies for the appeal and for the mandamus is to the district court's review of the order granting discovery. The first order, the July 1, 2016 order, merely authorized the subpoena. That was an ex parte order. You never sought leave to submit additional information or any other type of relief from the magistrate's order, did you? We did not. And let me explain that we had indicated in our letter briefing, because that's all we were permitted to do, that we would be available to submit briefing. We did not know that the magistrate would necessarily take five-page discovery reports and dispose of the whole issue. Oftentimes, these discovery proceedings lead to further targeted briefing, lead to submission of evidence, lead to arguments, and none of that was ---- Regardless, you were able to submit, I think it was 20 pages of argument concerning your objection to the subpoena. Why wasn't that an ample opportunity to be heard on this issue? Well, there were four discovery reports because ancillary issues came up, such as the protective order, for example. But on the key issue of the intel factors, it was fundamentally a five-page report, which resulted in the ---- But was this your first time in court that it didn't occur to people, I don't know if it was you or not, to say, well, Judge, either orally or in writing, I know you have a standing order. We think this case is important enough or this issue is important enough that we seek leave to file an expanded request here. It did not occur to anybody? Nobody's ever done that before? The issue was raised. It's in the record at ER 58, where we had identified the evidence that we could submit and we identified the issue that the cases are all stayed in Germany because all of the asserted patent claims have been held invalid. And we had indicated that that was the case. The magistrate judge should have received some evidence on that. And we had indicated that we were available. Perhaps we were too polite, but we indicated that ---- So the answer to my question is no, you did not do that. It did not occur to you to do that. I would not agree with that. The answer to the question is that we had offered to provide that information after identifying what it was. But we were faced with a standing order that prevented us from doing so. But the bottom line is I think her question is pretty important because as I reviewed what happened here, it seems to me that you went through the magistrate issues its order. You did not object to the order. You didn't move to quash the order. You didn't do anything like that. You just said, well, let's see what the discovery is. So now we're all the way out to the end of determining what the discovery is. And now at that point we're trying to see if the order should be enforced. I don't see that to be similar to Hoagland at all because in Hoagland they said, we're not giving up this information. In fact, we'll go to jail before we give up this information. And at that point one could say it's final. I'm trying to decide at this point you've done all you need to do to decide what the discovery is. You didn't fight. You didn't file any motion to quash. You got all the way through with the discovery. So at that point it's time. It's final. It's time to be appealed. And therefore Hoagland doesn't apply. So I would not agree with that. So when we received the first order, which was an ex parte order, within 14 days as we were permitted to do, we served objections under Rule 45D2B. That's in the record at A91, I believe. We served objections. There weren't objections to the order, just objections to whatever discovery was to be supplied. That's right. The original order merely permitted Abiomed to serve a subpoena. We didn't have a problem with an ex parte order that permitted them to serve a subpoena. We objected the subpoena on intel grounds. That's in the record at A92, I believe. And we followed the magistrate's order, which expressly precluded us from filing a motion to quash. You said polite. There's a difference between being polite and making a record for your appeal. And I just don't know if you made the record here. Let me ask you about the intel factors, if I could. I'm just curious. How many of these heart pumps exist? How many exist? I assume it must be over dozens. You mean it physically exists in this world? Yes. Because I'm curious because you say it would be an unreasonable burden to produce three, I think, is what the number. Three pumps. But I don't have any sense of how many of these exist in the world. And if there's five of them asking for three, then I guess that's burdensome, or are there 500? The nature of the burden is that it is being produced to a direct competitor. And the American Standard v. Pfizer case, for example, recognizes that that is a burden. That is one of four factors. But you haven't had it approved yet, right? It was approved in Europe. It has not been approved in the U.S. So if we would agree with you, I just wanted to know, regarding that the intel factors are a way in your favor, does that mean we have to reverse? Or is there some residual discretion there that even if we view the factors clearly, you know, ways in your favor, the magistrate could have reasonably determined that one or two went against you, and that means we affirm. If you could talk about that a little bit. Sure. I think that the proper result would be to reverse because the facts are quite simple. The cases in Germany are state. All of the asserted patent claims have been held invalid, and that is on point with K-dot-com. I have a question about that. It's a little surprising to me that the parties can't agree on this simple fact of whether the European courts have invalidated Biomed's patents. What is your view of the status? Because apparently both of you guys are not saying the same thing. We have in the record, and it's cited, I think it's A-17, but I can identify that all of the asserted patent claims have been held invalid, and none of their declarations dispute that. They say that patents have been upheld because additional claims that were being litigated in Europe have been allowed by those courts. But the patent claims that are issued in Germany in the underlying case, all invalid. Counsel, I'd like you to answer Judge Merguia's question because I wish I would have been able to ask it as effectively as she did. But the bottom line is I'm here on abuse of discretion. And I'm here, you, with some factors. And she says, you know, what kind of a, you know, why is this an abuse of discretion, even though you disagree on some factors, but the magistrate did not go with you? I'm trying to figure out why it is an abuse. And as I understand it, that was her question.  Sure. When we received the original ex parte order in July of 2016, it authorized service to the subpoena, just as in Tokyo District Court where the objections and intel factors are considered later. But we were faced with an order that, number one, precluded us from filing a motion to quash, and number two, precluded us from submitting evidence. I don't know that that's true, so go on to the second point, because I don't think that order said you couldn't have moved to quash. But go ahead. Okay. So I think in the magistrate's published cases, Burns v. Ryan, for example, he said that it precludes motions to quash. But in terms of why we didn't submit evidence, we certainly didn't submit evidence because of the motion, but also because this procedure of discovery reports does not always end in a final decision. You're not talking about what she asked you about. She said it's three. Oh, I'm sorry. I mean, what she's really saying is we know there's three that are wanted. We know that the magistrate says produce the three. We know what the situation is generally under the factors that the magistrate looked at. So why is it I can say that the magistrate abused its discretion using those factors? Sure. Because the magistrate's order itself said that he was unable to judge which side is more accurate about the status of the underlying German actions. Well, but that's just one factor. Well, all three of the factors that relate to the underlying matter, Intel Factor I, II, and III, clearly cut in our favor. And Factor IV, as the Supreme Court itself indicated, is a reason to deny but is not in itself a reason to grant. Well, why do they weigh in your favor? I guess that's what I'm trying to figure out. Where we are. Number one, we were a participant in the foreign action. That is an Intel Factor. The foreign court has jurisdiction over us and can decide what it wants to do with discovery. Number two, the case is not underway and the foreign court is not receptive to discovery under King.com because all the cases are stayed and have been stayed for nearly two years. Number three, the, you know, third Intel Factor, which is it in effect circumvents foreign proof-gathering avenues because there are avenues available in Germany. They may be limited, but Abiy Ahmed never attempted that, and that's also undisputed in the record. So all of those factors clearly favor denial of the 1782. And I believe that it would, in fact, allow this court to summarily reverse based on those factors. All right. Your time has expired. There don't appear to be additional questions. I'll make a decision on rebuttal after we, if my colleagues have any additional questions. Thank you. Thank you. Thank you. Good morning. May it please the court, Patricia Peden on behalf of Abiy Ahmed. This is an appeal from a district court's discretionary discovery order. No one disputes that the 1782 petition was validly issued. No one disputes the statutory requirements for the petition. And in the district court below, Thoratek did not dispute the Intel Factors for issuance of the subpoena. When the time came to appeal the issuance of the subpoena, no appeal was made. No motion to quash was made. We ended up in front of the magistrate judge on a pure discovery issue. So once the subpoena was allowed to issue and wasn't challenged with a motion to quash, as the magistrate judge expressly told Thoratek to do, the magistrate judge was allowed to exercise his broad discretion under this Court's authority and under the Intel Factors, whatever the parties wanted to discover or discuss. It was just a Rule 26 discovery order. Sotomayor, what's your view on whether the European courts invalidated any or all of Abiy Ahmed's patents? They have not, Your Honor. And, again, this goes back a little bit to the argument that was just before us. And what the Supreme Court said in Intel is that it doesn't, one, action only has to be reasonably contemplated. Two, we don't look to what happens in foreign proceedings, because what happens in foreign courts ---- But have they been ---- They have not. They have not. In the German courts, they're, unlike the U.S. system where we have one infringement case, in the German courts, nullity or their invalidity actions are completely separate from their infringement actions. Keep in mind that this discovery was sought for the infringement actions, not for the nullity. All right. If they haven't validated, if the European courts haven't validated any or all of your patents, do you agree that your interest in forcing Thoratech to give a competitor samples of its heart pump is greatly diminished? No. So even if you don't have any valid patents, you still get to look at their heart pumps, a competitor? Judge Callahan, that's not how the system works in Germany. It's the nullity courts, there's an ongoing, there's an ongoing appeal process. We have several patents, several claims. There was just a hearing right before Thanksgiving. It's an ongoing process. And so until there's a final resolution reached, which there has not been, then it's an ongoing process. It's still for use in German, in the German proceedings. And, of course, what we sought the evidence for was for the infringement piece, which in Germany is separate. Let's say you had gone through the whole process and you won. Are you in a better position then to look at a competitor's heart pump than you are until you have won? You've lost at some levels. Is that correct? And you're still appealing? In the courts of first instance, we have lost on some claims of some patents, some invalidity findings, which are on appeal. Okay. So there is, so what you're saying is it's not final, but you're not saying that you didn't win at that early stage, right? No. What I am saying is it's an ongoing process. So, for example, one of the patents is. Well, but it's kind of like if it's an ongoing process, you want to win at every stage, don't you? I mean, if you're not. I mean, have you lost at the stages up to this point, but you're still appealing or what's the status? On some claims, they were initially ruled invalid. On some claims, there have been subsequent proceedings. The hearing right before or the hearing before Thanksgiving, the German court said that some of the pigtail patent claims would issue in amended form. We don't have a final written ruling, but that was the ruling of the court, that we were going to get those claims that they say that are finally invalidated, we're going to get those claims in amended form. So it's not that simple to say, as would be the case maybe in the U.S. Well, it could be simple if you either won or lost in the final stages, but you haven't won yet. Is that right? We have not won in the final stages or lost in the final stages. And as for. You have lost in some preliminary stages. Yes. And yes. Okay. I just, you know, you're kind of, we're dancing around here, so. It's just hard because these systems aren't comparable, right? And that is what Intel tells us is that we don't, we're not going to be looking at what the foreign courts do because they have two separate actions. And the action that we've sought discovery for is temporarily state. Let me back up just for a little bit because I want to ask you about the Mandamus petition. I take it that your position today is that we don't need to consider the Mandamus petition. Is that correct? Actually, I think the parties agree that this Court's review must be by way of Mandamus. You both agree that we have to review it by way of Mandamus? Yes. It's in Thoratek's writ of Mandamus at page 21. And that's because we both agree that this Hogson's ruling, although it's old and the holding in it is narrow, it directly applies in this case. So you're both, you're saying that both of you think we have to resolve by Mandamus and that Hogson controls, and so we have to send it back to the district court? Well, if you feel... Or we don't have jurisdiction. Well, you don't have direct appellate jurisdiction. And so you have... That's what Hogson covers. That's what, it's just direct appeal. It doesn't prevent Mandamus review. That's right. It doesn't. And, in fact, this Court in other cases, when there's been a question, for example, after Mohawk Industries first issued, of whether or not direct appeal lied, used the Mandamus as a vehicle to decide it. You're saying there wasn't a way to appeal, so you had, but it seems odd because we're here on appeal. Yes. Although there's a jurisdictional challenge in the direct appeal, both parties acknowledge Hogson applies, and therefore... What if we disagree? Yes. What if we say Hogson doesn't apply? Well, you know, for my client... I mean, I don't believe that the parties can bind me simply because they think something. I looked at Hogson. I know what Hogson says. And, frankly, I don't know why what happened here isn't more than enough to put this question on appeal in a direct appeal. So whether this Court decides this appeal either on direct appeal, deciding to distinguish Hogson, or on writ, for my client's case, it doesn't matter. The standard is still abuse of discretion. And in either case, Thorntek cannot show abuse of discretion in the trial court below. But if I go the way you're suggesting I must go, I've got to send this back on mandamus, haven't I? Only if you grant the writ. But there is no reason to grant the writ in this case. Thorntek can't meet at least the third factor. The third factor, that the district court's order is clearly erroneous as a matter of law? Yes. And that is, without that factor, they don't get a writ. It doesn't go back. So for purposes of our discussion today, I'll just focus on the clear error abuse of discretion standard, because whichever way this Court gets to this issue, which other vehicle it uses, that's going to apply. But if you, okay, but we asked you to be ready to talk about, you sat through the last case. I did. And so if we said this was dispositive, then clear error would not apply. So that puts them, but I'm assuming your position is they never mentioned it before, so it's waived. Yes. And so even if we rule in the other case that it's a dispositive motion, Yes. there's no worries here because they didn't bring it up. No. Is that your position? Yes. You asked us whether or not The two exceptions he suggested. Well, first, let me just say, one of those exceptions, Thorotek says, well, you know, we didn't really, we relied on the fact that this has been well-established law, so that exception applies. In fact, at page 19 of the writ, footnote 5, Thorotek raises in a footnote the possibility of whether or not this might have been an issue. But, of course, they didn't brief it, they didn't raise it below, they didn't take it to the district court in the first instance, they didn't brief it to this court, and then they dropped in a footnote that they could have but didn't. Okay. So let's go on to the second, because I thought we kind of addressed that first. May I make one more point on that? Oh, sure. And that's just, even if the court were to find that for some reason it was preserved and it clearly was not, in this case it's more than that. It was an invited error, because that was the standard they offered the court asking for its review, and it would also be harmless error. Because if you look at the district court's careful review in this case, the court at that time, the district court knew that the mandamus had been filed, and he looked through all of the record and he made his own independent findings. You can see he's not just deferring to the magistrate judge. So in this case, it clearly wouldn't have made a difference. It's not one where reasonable minds could. Reached a second argument now. He made two arguments. The first was it's new law. New law, and then he said it didn't change below. He says it's pure law. It's pure law. Therefore, we need not. We can do it on appeal because it's law. And so I'm wanting your answer to that. It is. In our case, it's not pure law. I assume, I'm sure if this Court were to issue an opinion changing the current practice of treating these orders as nondispositive. Why isn't it a legal decision? Well, it would change the standard. Is there any factual context? Yes. In this case. Maybe not argue that. What's the factual determination? Well, in this case, the only thing that was taken up to the district court to review at all was the magistrate judge's discretionary discovery ruling. Right? There was no appeal from the order to issue the subpoena. There was no motion to quash. The only thing that was taken up was a pure discovery issue of whether or not the district court should have allowed the discovery. So it won't apply here. So now you talk, let's go to the abuse of discretion. District court made a decision, and I review that on abuse of discretion. He's saying the district court abused its discretion in applying the standards of intel. Why is he wrong? Several reasons. First of all, the standards of intel, those particular standards, as the district court found, were waived, because the intel standards, along with the statutory criteria, is what the magistrate judge decides, what the magistrate judge reviews in deciding to issue the subpoena. After the subpoena was issued and no motion to quash was filed, the criteria for the subpoena, any dispute to that had been waived. Even if we set that aside, even if we set that aside and we're looking at the intel factors that were briefed, this Court has said several times, and clearly in Judge Graber's opinion in Akiba, how we review 1782 petitions. And it says there's not the ‑‑ the magistrate judge doesn't have to put anything in writing, doesn't have to list out the factors. In fact, 1782 provides a lack of specific guidance on how to rule on these motions. Now, I think you can look at the 40 pages of briefing in the magistrate judge's order and see he gave each of the arguments great credit and credence, and he weighed through these. And the district court judge did it again. And there's just no justification on a pure discovery motion of this type with this much broad discretion and the leniency that's allowed by 1782 not to order this narrow discovery. Well, as I understand your argument, they waived the intel factor argument by not doing anything about it. So now we're here only on an abuse of discretion in discovery, because after that we've just had discovery disputes, which have been, as I understand your argument, have been moderated by the district court's preliminary order as to how to make the discovery, how to do the discovery and how to bring the disputes before the district court. That's right. And I just have a minute left, so I'd like to raise what I think is a really important point for this Court to consider. And that's, if you look at the writ, you look at the briefing from Thoratek, there's a lot of rhetoric and a lot of accusations that what the magistrate judge here was ex parte, that it imposed a standing rule that forbid parties from following the rules of civil procedure, that they asked to be heard. None of that bears out. I want the panel to understand that when Thoratek says that this was reviewed ex parte and on a 341-page record, that was what the Court did when it was reviewing our prima facie showing to get the petition in the first place. That evidence was not considered in the discovery disputes. No parties were allowed, without first seeking leave of court, to offer exhibits. We had the same pages. We had the same rules. The magistrate judge didn't — the magistrate judge's standing order doesn't overrule the Federal rules of civil procedure. It doesn't abrogate them. In fact, in his order to the parties, he told them to file a motion to quash. He named it. There's nothing in his rules that says, oh, all of a sudden we have a whole different playbook. They were obligated to file the motion to quash. And they say, well, they filed a letter to the Court asking to be heard. That's at ER 62. If you can take a look at the letter to the Court, it asks not — it says nothing about asking to be heard. There's no request to file a motion. There's no request for leave. They claim to have made evidentiary proffers in their brief. They offered the evidence explaining why it was relevant. Kagan. Okay. So if you're in overtime, so if you can bring it to a close. Or I guess Judge McGeer has a question. Because I'm just trying to figure out how we resolve this. That's why I asked you about the mandamus, because — and I know you both — you It seemed like Hogson says there's no jurisdiction on appeal because you probably didn't — you didn't follow the right procedure by having contempt ordered. And here there is a way to appeal, and they've also appealed. So I just — I'm not trying to figure out how mandamus can be appropriate here. Yeah. So as I read this Court's Hogson's order, it says, in the narrow circumstance where you have a party who is both the target of the 1782 petition application as well as a party in the foreign proceeding, in that case, the law that applies in the criminal context, you know, is different. And in that case, you have to go through the other remedies before you can take an appeal on a collateral order. So — So why did you file this — join this stipulation that we've got to go mandamus? Because what you're articulating right there is exactly what I articulated or I was thinking. I mean, you look at this order. You look how it's so much different than that 74 case. There's no question they're not the same. You've gone to the end result. They've given them every opportunity to do what they had to do. They could have filed their motion to quash. They could have done all these things. They did not. In fact, they fought about what the discovery process was. And when we got to the end of the fight about the discovery process, here we are on appeal. That's all we've got. The end has come, just like as in the 74 case. So why did you file some stipulation that we should do this on mandamus? Because the Hogson case is controlling and it's on all fours, and I think both parties struggle what to do with that. Well, I don't think it's on all fours. But I don't think Hogson says that — Hogson says, you know, it kind of sets forth the different, you know, ways here in terms of jurisdiction. But here, because there was a path for appeal, I just don't understand how we would go on the mandamus route. I agree with you that Hogson is on all fours. Thank you. Well, I'm just — just because from the standpoint — but I still think that the mandamus can be addressed. Yes. So I don't — you know, I realize that puts me in a different position with my colleagues, and I wouldn't accept that stipulation if I didn't agree with this. But I think it does squarely fall within the rule because Thoratec, the target of the discovery order, is a party to the German proceedings. And, you know, I think Thoratec makes arguments in an attempt to distance itself from Hogson and tries to minimize it, but I still think that it controls. And we're not — we're a three-judge panel. We're not the en banc panel. And I don't know that I think that Hogson, you know, is — was well — you know, I'm not sure it was well decided, but that — I think we're stuck with it. But I think it's still — we can do a mandamus. I agree with you. And in — up until the point where whether or not it's well decided, because you're right, it is on all fours. The holding directly applies here. Although it's narrow, it's spot on in this case. And, you know, Thoratec's tried to distinguish it, which would be one way to go, except for 1782, the statute itself, it really doesn't allow for that kind of distinguish between letters rogatory and applications. The statute treats them the same. It's a discovery statute. So then we get into, you know, what does that mean? Well, I think the Supreme Court in Mohawk Industries has said what it thinks it means about appeals of collateral orders, right? Mohawk says — and in that case, we were talking about disclosure of confidential information. Mohawk was attorney-client privilege. And whether or not that would satisfy the collateral order appeal and what the Supreme Court said, no, you've got — because you have other avenues. One of those avenues is take a contempt finding. The other avenue is a writ. And, of course, we have both of those here. Thoratec could have taken a contempt finding, didn't. It filed a writ, which is one of the avenues that Mohawk Industries identifies. And so I think that's how we all got to the conclusion that we're here on a writ. Did you have additional questions? No. All right. I think we've taken both of you about the same amount over time. Did anyone have any additional questions of the appellant? No. All right. Then thank you both for your arguments. This matter will stand submitted.
judges: Callahan, N.R. Smith, Murguia